Good morning, your honors. I'm going to have to please the court. Aaron Dissner on behalf of the plaintiff appellants. I'd like to reserve four minutes for a rebuttal, maybe three and a half. We're here today because this case was dismissed on the grounds that the plaintiffs in their written opposition to the motion to dismiss inadvertently neglected to address the issue of antitrust standing. Specifically, whether or not plaintiffs and defendants participate in the same market. And secondarily, I guess, it's come up as a question of whether which market of the two markets involved the restraint of trade took place in. I submit that it was an error, but an inadvertent error to neglect to do that in the written opposition. But at oral argument on the motion, I did make that argument. And I pointed out that in the complaint, all of the elements comprising that argument are alleged. No new argument was raised, for example, in the motion for reconsideration. Contrary to the characterization by the defendants, the appellees, their answering brief has seven pages with countless references complaining that this motion for reconsideration is the first time this argument has been brought to the court's attention. This is improper for all of these reasons. Not one single mention of the motion hearing at which I believe I managed to cure the error in the written opposition omitting that argument by connecting those dots of the facts involved in the alleged in the complaint, connecting the dots as to how that constitutes market participation, A, by the plaintiffs as consumers in the market of the defendant. And B, more importantly, as defendants in their increasing role getting involved in content distribution in the markets of the producers. So I think a question before the court, the only real grounds for dismissal is whether or not the omission in the written opposition is fatal to the argument altogether. And I guess the secondary question might be whether the court made an improper finding of fact based on that omission that, in fact, the parties do not whatsoever participate in the same market, in each other's markets. So you believe that you sufficiently allege antitrust standing? I believe that at the hearing on the motion to dismiss, I made, I connected the dots sufficiently that those dots having already existed, those dots having already been alleged as to why these relationships exist, what I failed to do was in the written opposition was to paint that picture. But I believe that that might have been as simple as saying here's, in the written opposition, here's why this is wrong, see paragraph four, see paragraph whatever from the complaint. Well, maybe you can just briefly explain to me why you think, just summarize why you think you have alleged sufficiently for antitrust standing, and in particular, how the carriers were participants in a market for multimedia content in which the alleged restraint occurred. Gladly, Your Honor. As alleged in the complaint, the carriers wear many hats. They created this MMS pipeline by which these files can traverse without any interference necessarily from them in a competitive context. But at the same time, they also enter into relationships as middlemen and clearinghouses for other content, for some of the content that goes across what these, one technique called common short code, which is when the carrier will assign a content producer with one of those five-digit numbers that you can text to to receive that content. And frankly, I'm glad Your Honor asked, because if we don't have enough here to reverse, but the Court might be inclined to grant leave to amend, there is an ongoing class action. I'm sorry. I'm not sure that it's a class action, but it is an antitrust case against all of the same defendants in New York on the subject of their control within the common short code market. But our argument is that the fact that this common short code exists, and they are involved in that, and they've also signaled, interestingly, and this is on the record as an exhibit B to our opposition, there was the CEO of Verizon was on Charlie Rose, and he said as much, that we are inclined, we are trying to get more into the business of the content, not just the passive pipeline that the content travels. I guess my worry about this is that it seems to me that you allege that your client transacts business in the ONDEC and the CSC markets. The defendant's family. Oh, sorry, submarkets. But, well, not that they do. Yeah. And it seems to me that you suggest that your injury instead happens in the MMS market. And so I guess I'm having a tough time linking the injury with the market. That's fair. Let me clarify. There's no such thing as an MMS market. The two markets involved here are the market for wireless services in which all of us with cell phones are customers. Well, but you do allege. I mean, I read in the complaint where you describe MMS, and you say it serves as a pipeline. Correct. Or dedicated conduit that customers pay the carriers for the ability to send the photos, the videos, the forms of multimedia, and that unlike all other submarkets there identified in the complaint, the carriers do not use MMS. Yes. Or sell or license multimedia content. So in sum, it says your injury is involved in a market they're not in. No, there's two markets involved. There's the market that they are in as the cell phone tower owners who run these networks, and then there's the market of content sales and distribution. And the methodologies right now include common short code and on deck in which they are involved in a commercial context more than passive as they are in the wireless service provision. But the business model in theory I think that's confusing you is the idea that plaintiffs can sell things peer-to-peer, that they might somehow commercialize the transaction from one sender to one receiver, independent of the fingerprints of the carriers that they have on these other MMS. To be fair, what's confusing me is that it seems to me that you've made a great argument that the MMS constitutes an argument which related to other sub-markets, but when I look at my precedent, which is legal economic evaluations versus metropolitan life, it suggests that doesn't get you anything. That if it's a different market and it's only related to, you don't have the injury. Well, no. With respect, and I've got to reserve a little bit of time here, but the market for content provision to a consumer can be divided into these different methodologies. And the methodologies that now have the stamp of approval of the gatekeepers of the pipeline are these methods from which they drive middleman fees and from which they even sell things directly from their website. The idea of getting some third-party commercial benefit from the pipeline without their blessing at this point is not feasible because of the lack of accountability based on the things that they've refused to do. With respect, Your Honor, I need to reserve a little bit of time. Okay. Thank you. Thank you. Judge Smith, may it please the Court. My name is Aaron Panner. I represent Verizon Wireless, but I'm arguing on behalf of all of the defendants in this matter. I think, Your Honor, that your questions to counsel for the plaintiffs gets really to the heart of the merits of why the antitrust injury allegation here is insufficient, that the supposed restraint took place in a different market from the one in which the supposed injury occurred. This is a lot like a situation in which someone wants essentially defendants to change the way they do business so that it would be more favorable to the business model that they want to pursue. That is a lot like the legal evaluations case that you cite. It's also, although it was not an antitrust standing case, much like what happened in the SmileCare case where the court said you want the defendant to behave in a commercially different way that would be more favorable for you. That's really not an antitrust problem. I think this case really falls squarely into that category. I would be happy to address any of the issues related to the procedural question. I think the procedural question does certainly influence the propriety of the request for amending the complaint, which came only after the complaint had been dismissed. Also, the adequacy of the allegation of conspiracy, which should provide the court additional comfort in affirming what was a correct decision below. Well, because the request to amend was late, it doesn't mean that's always a good reason to deny it. I think the basic reason Judge Ferguson gave was because I guess he thought it was futile, right? I agree with that, Your Honor. I didn't mean to say that it was the only reason. But I guess you agree with that. Yes, Your Honor, because you do. I'm sorry. You think an amendment would be futile? I do think an amendment would be futile. And let me try to say quickly why. First of all, the affirmative allegations of the complaint make clear that the supposed restraint, the alleged restraint, took place in a market different from the market in which the supposed injury occurred. So the affirmative allegations are inconsistent with the allegation of antitrust injury in standing. And I think the other point is, and it goes to the discretion of the district court, plaintiffs have failed at any point to indicate how they would cure that problem. They've never given any indication of an additional allegation of fact that they would make. They simply say that the district court was mistaken. And the basis of that seems to be that the emphasis on the fact that the carriers are participants in content distribution in a middleman role with respect to other types of content distribution, but as we tried to point out in our brief, that is not the market in which the alleged restraint occurred. That's not, and to the contrary, the discussion of the carrier's conduct in that aspect of the market emphasizes that the conduct is equitable and competitive. And that's why I think the district judge was certainly within his discretion to say that there was no basis for allowing amendment, particularly given the procedural issues. In fact, the plaintiffs don't even allege they're consumers of this carrier's MMS, do they? They don't. There's an argument in plaintiff's brief before this court that says, well, we're all consumers of wireless services after all. But, of course, that's not an allegation that would paint them as consumers in the relevant sense. That is, they are not alleging that they were consumers that were in the MMS market that were harmed as a result of the alleged restraint. Plaintiffs do seem to have a point when they say that the market for multimedia content is being chilled or that profit-making potential for content producers is depressed by carriers' actions. I'm just curious, what recourse do plaintiffs have if it's not copyright or antitrust suits? Well, Your Honor, granting all of the allegations as true and, frankly, even looking simply at the complaint and the materials attached, the court will find that the sort of digital rights management measures that plaintiffs argue ought to be included are, in fact, included within handsets today. Obviously, the so- Did you say handsets? Yes, within the handset terminal. And that's what the forward lock mechanism is described in the materials attached to the complaint as being something that's implemented within the handset. But the fact of the matter is that in a circumstance where, you know, again, accepting everything as, you know, absolutely true, the answer would be, well, if this is not being implemented within the network, then look for a different technical solution. The antitrust laws don't provide a right to have markets and work in a way that would be commercially favorable for someone who would like to, you know, would like to go into a business that doesn't exist. And that's really why, you know, with respect to the copyright issue, to the extent there are copyright violations going on, you can go after, you know, the plaintiffs can go after the copyright violators. But the point is they don't have a recourse against the wire. As this Court held, there's no copyright claim because of the – for good and reasons having to do with the scope of indirect liability under the copyright statute. And there's no antitrust claim because it's really not an antitrust problem they're complaining about. Thank you very much for your argument. Thank you, Robert. I think you have reserved a minute. In my scant remaining time, I'd like to bring the Court's attention to the complaint which says the sale slash licensing of multimedia content to wireless customers represents a relevant – What paragraph are you on? This is paragraph 25, page 8 of the First Amendment complaint. It defines the relevant market as the sale and licensing of multimedia content to wireless customers. So that would include methodology of NMS or the methodology of common short code or on-deck sales. So by that definition right here in the complaint, that would cover the behavior that we've been discussing. And – Well, I think it would cover the behavior discussing if you can put four basically different markets in the same market. And I frankly think that based on what we have here, you can put three of them in there pretty well, but I don't know how to get the one you have got your injury in there at all. Well, with all due respect, that NMS – That's what I'm saying. I understand. NMS is really delivery. It's not its own market. What these consumers are receiving and what the producers are trying to sell to them is a product, is content, is creative content. And that, by the way, differentiates us from legal economic evaluations versus MetLife, where that issue there was a question of fungible info, the ability of these annuity advisors to get these premiums and ratings practices. What we have here is creative, unique content that is being foreclosed from consumption. Thank you. I think we have your argument. Thank you very much. Oh, you have another question. Let me ask a question not related to this case. Are you by chance related to the late Elliot Dozier? I am. I'm his son. Oh, I thought so. Good man. Thank you very much for saying so.  All right. Thank you very much. Thank you, Your Honor. The case of Davis v. ATT Wireless, 1255985 is submitted.
judges: Tashima, Smith, Murguia